AF Approval _jun H_                          Chief Approval _MPF_

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                                   CASE NO. 6:23-cr-08-RBD-LHP

COURY ROBERT BADNELL

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Coury R. Badnell, and the attorney for the defendant, Erin

B. Hyde, Esq., mutually agree as follows:

### A.     Particularized Terms

     1.     Count Pleading To

        The defendant shall enter a plea of guilty to Count One of the

Indictment. Count One charges the defendant with Conspiracy to Commit

Wire Fraud, in violation of 18 U.S.C. § 1349.

     2.     Maximum Penalties

        Count One carries a maximum sentence of 20 years

imprisonment, a fine of $250,000, or twice the gross gain caused by the

offense, or twice the gross loss caused by the offense, whichever is greater, a

term of supervised release of not more than 3 years, and a special assessment

Defendant's Initials _CB_

of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

| | |
|---|---|
| First: | The defendants agreed to accomplish a shared and common plan to defraud, or obtain money under false pretenses; |
| Second: | the defendants knew the unlawful purpose of the plan, and willfully joined in it; |
| Third: | during the conspiracy, one of the conspirators engaged in at least one overt act described in the indictment. i.e. transmitted communications by wire, in or affecting interstate or foreign commerce, for the purpose of executing the scheme or artifice; and |
| Fourth: | The overt act was carried out with the purpose of accomplishing some objective of the conspiracy. |

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two, Three, Four, Five and Six will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

Defendant's Initials ___CB___              2

5.    No Further Charges

        If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

6.    Mandatory Restitution to Victims of Offense of Conviction

        Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to known victims of the offense for the full amount of the victims' losses as determined by the Court.  Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

7.    Guidelines Sentence

        Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant

Defendant's Initials __CB__                    3

will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and if no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot

Defendant's Initials  OB                4

and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the

Defendant's Initials _CB_                    5

time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the

Defendant's Initials _CB_                        6

defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

Defendant's Initials _CB___                    7

B.  **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _CB___                          8

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to

Defendant's Initials __C$__                    9

make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.   <u>Financial Disclosures</u>

     Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to

Defendant's Initials _CB_           10

the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make

Defendant's Initials _CB_                11

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this

Defendant's Initials  CB                    12

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials _C᛭_____          13

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _19th_ day of ~~June~~ *July* 2023.

ROGER B. HANDBERG
United States Attorney


_____
Coury Robert Badnell
Defendant

_____
Ranganath Manthripragada
Assistant United States Attorney


_____
Erin B. Hyde, Esq.
Attorney for Defendant

_____
Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division


Defendant's Initials __CN__                15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO. 6:23-cr-08-RBD-LHP

COURY ROBERT BADNELL


PERSONALIZATION OF ELEMENTS


1.      Beginning no later than January 1, 2022, and continuing through January 31, 2022, in the Middle District of Florida, did you agree with one or more persons, in some way or manner, to accomplish a shared plan to defraud or obtain money under false pretenses?

2.      Did you know the unlawful purpose of the plan and willfully join in it?

3.      During this time period, did you or one of the conspirators transmit communications by wire that affected interstate or foreign commerce, for the purpose of executing the scheme and to accomplish some objective of the conspiracy?


Defendant's Initials __*Cb*__              16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 6:23-cr-08-RBD-LHP

COURY ROBER BADNELL

FACTUAL BASIS

"SIM swapping" is a fraud scheme where an individual's wireless

service is taken over by a perpetrator, with the end goal of gaining access to

that individual's email accounts and their financial accounts. The objective for

the defendant and his co-conspirators in this conspiracy and fraud scheme was

to target individuals who maintained cryptocurrency.

Cryptocurrency is a type of decentralized digital currency that is not

issued by a government or financial institution and can only be accessed

online using a computer or a smart phone. It is designed specifically to be used

on the internet. The theft of the cryptocurrency from all victims in this fraud

scheme involved accessing their private digital accounts online, using a

cellular phone, and transferring the cryptocurrency to electronic wallets the

defendants or co-conspirators controlled. Therefore, this scheme involved

transmitting communications by wire that affected interstate or foreign

commerce.

Defendant's Initials _C_B_                       17

The SIM swap fraud scheme: A SIM swap takes place when the wireless service that is associated with a victim's wireless account is transferred to a SIM card, and often a physical device, that is not in the victim's control. Once the fraudster has completed the SIM swap, the cell phone service that was previously associated with the victim, is now associated with a SIM card that the fraudster controls. This swapped SIM card is then used with a cellular device that the fraudster has in his possession. As a result of this swap, fraudsters may be able to access the victim's accounts at email providers, traditional banks, and cryptocurrency exchanges. Fraudsters typically access these accounts through initiating password reset requests with the goal of changing the victim's password. When a fraudster resets the password, the authentication requests that the account sends out multi factor authentication codes or text messages that require an acknowledgement and response. These messages are received by the fraudster on the mobile device he controls, instead of on the victim's device. These authentication requests are often sent to an email account, or via text message with an SMS code. Once these requests have been received and completed by the fraudster, they can change the password, thereby locking out the victim from the account. This process can be repeated for any account that a victim has, including

Defendant's Initials _CAB_                18

accounts that utilize traditional banking applications or cryptocurrency exchanges.

SIM swappers typically are organized into the following roles to carry out their scheme:

- <u>Searcher</u> - in the fraud scheme, this individual is usually the leader/organizer, and has broad responsibilities. He/she will conduct the initial research to identify victims, obtain their personally identifiable information, may conduct password resets, and ultimately, steal the cryptocurrency or other assets that have been identified.

- <u>Caller</u> - this person is expected to contact the wireless company and socially engineer or trick employees into completing the swap. If this can be achieved online, or by phone, this component of the scheme can remain anonymous. Generally however, the Caller might be working with another individual that appears in-person at a communications provider store to facilitate a SIM swap. In this conspiracy and fraud scheme, defendant Badnell was an insider who had access to Verizon customer accounts and authority to conduct the SIM swaps that allowed the co-conspirators to gain access to victim accounts.

Defendant's Initials  CB

19

- <u>Holder</u> - this individual actually has physical possession of the phone to which the SIM swap has been made, and is used to access the victim's account.  At various times, defendants Levy and Hutchinson called victim phone numbers after the SIM swap to verify that the SIM swap was successful. Evidence of those calls made using numbers and devices that are attributed to defendants Levy and Hutchinson were electronically captured in this process.

<u>The Investigation</u>:

In February 2022, FBI-Tampa received notification of a report from Verizon Corporate Security-External Investigations of multiple unauthorized SIM swaps that had taken place in the Middle District of Florida. Credentials assigned to Verizon employee, and Key holding Manager at Verizon locations in Sanford and Altamonte Springs, defendant Coury Badnell, was used in several of those unauthorized transactions. Defendant Badnell's credential "BADNECO", was used in suspicious SIM swaps that took place at both locations, as either the primary or secondary representative for the SIM swaps.

Store surveillance images at both Verizon locations were reviewed to match the specific times that the victims had been SIM swapped; the security video showed defendant Badnell engaging with multiple unidentified

Defendant's Initials _CB_        20

subjects/customers at the approximate time that the specific victim's phone were compromised. Defendant Badnell was then seen beginning the process of verifying the account of the "customer" for whom he was about to conduct the SIM swap. Defendant Burgos was also seen on surveillance footage interacting with defendant Badnell at times that corresponded with victim SIM swaps.

In the case of one SIM swap, investigators compared images of the individual in the store speaking with defendant Badnell, to a known driver's license image of the customer who was SIM swapped. This visual comparison confirmed that the individual in the store was not the account holder who was SIM swapped. Additional surveillance appeared to indicate that some of the unidentified subjects who entered the store and interacted with defendant Badnell presented what appeared to be Personal Identification Information (PII). As with the other interactions described above, the PII presented did not match the physical description of the person that they were claiming to be.

Analysis of Verizon records showed that defendant Badnell also bypassed internal Verizon safety protocols. Verizon records confirmed that defendant Badnell completed SIM swaps by sending three multi-factor authentication codes to the victim phone number via text message. In the case of legitimate/normal SIM swaps, the customers would verify their identity

and then share the code sent to their mobile device to further prove identity to the store employee they were standing in front of. With these two pieces of information present, the employee would then verify the identity of the legitimate account owner and access their account.

However, video evidence of transactions involving victim accounts show that the individuals who were standing in front of defendant Badnell were not the actual account owners, and therefore did not have physical possession of the device linked to the wireless account. With no physical access to the device where the multi-factor authentication text message codes were sent, the swap should have stopped right there. Instead, defendant Badnell overrode the identity verification requirements and inputted into the system the note that the customer's device was broken or missing, "telling" the system that the customer did not receive the three text messages sent to his/her phone.

The records also show that in the case of SIM swaps for multiple victims of the scheme, defendant Badnell had another store employee verify that the proper identity verification steps took place to complete the approval process. With that approval, defendant Badnell was free to grant access to the victim's wireless account to individuals of his choosing.

Defendant's Initials __Cb__          22

Telephone record and store image analysis associated with victim accounts led the agents to identify a potential "holder" in the scheme (Uncharged Conspirator) , who provided information to investigators. This individual told investigators that he was introduced to the scheme by an individual named "Dre" ( identified as co-defendant Deandre Levy).  He further told investigators that defendant Levy and defendant Jordan Burgos asked him to go into the Verizon store and speak to a manager, who was said to be expecting him. This individual was also informed that the manager would be able to identify him by his clothing, and that the manager was "...the only black guy in the store..." with "...curly hair...", a physical description that matches defendant Badnell.

The Uncharged Conspirator was given a cell phone by defendants Levy and Burgos, with instructions to tell the store manager (defendant Badnell) that the cell phone did not work. He was also asked to give the manager a victim's telephone number; in turn, defendant Badnell was to give the Uncharged Conspirator a SIM card for the physical phone that he had brough in.  The Uncharged Conspirator did as he had been instructed, and observed defendant Badnell changing the SIM card on the phone. The Uncharged Conspirator was  also present when following the SIM swap, defendant's Levy and Burgos called the victim's phone to verify that the SIM-swap had been

Defendant's Initials ___C𝒷___          23

successful and the victim's wireless service was now connected to the cell phone that was in their possession.

In each of the cases investigated and associated with this SIM swap fraud scheme, victims experienced similar indicia of SIM swapping, which also included loss of connectivity. Shortly after this disruption of service, each of the victims noted that their email and financial accounts were not accessible because the passwords had been changed. Each of the victims then confirmed that cryptocurrency had been transferred from their accounts to unknown cryptocurrency wallets on the blockchain (digital wallets maintained and accessed online) without their authorization.

As a result of this scheme, signals were routed electronically over the internet through computer servers to a digital currency service engaged in interstate and foreign business. Additionally, Verizon is a telecommunications company and the largest wireless carrier in the United States with a network that covers every state. As a result, the consequences of the defendant's actions affected interstate and foreign commerce.

Over the period of the conspiracy charged in Count One, the defendants Badnell, Levy, Hutchinson and Burgos were successful in stealing $653,000 in cryptocurrency from multiple victims using the SIM swap wire fraud scheme.

Defendant's Initials __OB__                24

All defendants were present in the Middle District of Florida during SIM swaps, and when the conspirators gained access to victim cryptocurrency accounts to transfer cryptocurrency without authorization.

Defendant's Initials _____         25